Kenneth A. BARTON and Michael
J. Miller, Appellants,

v.

Michael J. ADANG, Thomas A. Roucheleau, Donald J. Merlo and Elizabeth E. Murray, Appellees.

No. 97–1491.

United States Court of Appeals,
Federal Circuit.

Dec. 9, 1998.

Michael F. Borun, Marshall, O'Toole, Gerstein, Murray & Borun, of Chicago, Illinois, argued for appellants. With him on the brief was Li–Hsien Rin–Laures. Of counsel on the brief were Lawrence M. Lavin, Jr., Monsanto Company, of Saint Louis, Missouri; and Charles L. Gholz and Alton D. Rollins, Oblon, Spivak, McClelland, Maier & Neustadt, of Arlington, Virginia.

Brett S. Sylvester, Sughrue, Mion, Zinn, MacPeak & Seas, PLLC, of Washington, DC, argued for appellees. With him on the brief were Thomas J. Macpeak, Susan J. Mack, and Oliver R. Ashe.

Before RICH, RADER, and GAJARSA, Circuit Judges.

RICH, Circuit Judge.

Kenneth A. Barton and Michael J. Miller appeal from a judgment of the Board of Patent Appeals and Interferences (Board) entered against Barton et al. in a three-party interference as to the subject matter in claims 1–4, 7, and 15–22 of the Barton et al. application designated as corresponding to a single count of the interference. Because we find that the Board abused its discretion, we reverse and remand.

## BACKGROUND

The Board declared a three-party interference on November 7, 1996, between the following two pending patent applications, whose owners were deemed junior parties, and an issued patent, whose owner was deemed the senior party, listed as follows:

(1) Serial No. 07/827,906, entitled "Improved Expression of Genes in Plants," filed by Kenneth A. Barton and Michael Miller, assigned to Agracetus (Barton et al.);

(2) Serial No. 08/434,105, entitled "Synthetic Plant Genes and Method for Preparation," filed by David A. Fischhoff and Frederick J. Perlak, assigned to Monsanto Company (Fischhoff et al.);

(3) U.S. Patent No. 5,380,831, entitled "Synthetic Insecticidal Crystal Protein Gene," filed by Michael J. Adang, Thomas A. Rocheleau, Donald J. Merlo, and Elizabeth E. Murray and assigned to Mycogen Plant Science, Inc. (Adang et al.).

The subject matter of the interference relates to introducing into plants genes that encode bacterial proteins from *B. thuringiensis* that are selectively toxic to insects so that the plant cells produce the bacterial insect toxin and are protected from insects that feed on them. More specifically, the count relates to designing modified genes from *B. thuringiensis* to be more highly expressed in plant host cells. The Board assigned only a single count in the interference, which reads as follows:

A method of designing a synthetic *Bacillus thuringiensis* gene to be more highly expressed in plants, comprising the steps of:

a) analyzing the coding sequence of a gene derived from a *Bacillus thuringiensis* which encodes an insecticidal protein toxin, and modifying a portion of said coding sequence to yield a modified sequence which contains a greater number of codons preferred by the intended plant host than did said coding sequence, or

b) analyzing the coding sequence of a gene derived from a *Bacillus thuringiensis* which encodes an insecticidal protein

toxin, and modifying a portion of said coding sequence to yield a modified sequence which contains a greater number of codons preferred by the intended plant host than did said coding sequence and fewer plant polyadenylation signals than said coding sequence.

The Board stated that all pending claims 1–4, 7, and 15–22 of the Barton et al. application were assigned to the count, claims 3, 5, 39–43 of the Fischhoff et al. application were assigned to the count, and all claims 1–14 of the Adang et al. patent were assigned to the count.

Shortly after the Board's declaration of the interference, Monsanto bought Agracetus, the owner of the Barton et al. application, and filed a notification of ownership of the entire right, title, and interest in both the Barton et al. and the Fischhoff et al. applications only two weeks after the interference had been declared. Monsanto stated in its notification that good cause existed for continuing the interference between all three parties pursuant to 37 C.F.R. § 1.602(a) because the precise content of the count in an interference is subject to change following preliminary motions, which were not yet due, and the inherent legal uncertainties involved in priority determinations in biotechnology concerning the possible application of a simultaneous conception and reduction to practice rule made it impossible for Monsanto to choose the best application with which to defend the interference.

Adang et al. countered that Monsanto had not shown good cause to continue the interference with both the Fischhoff et al. and Barton et al. applications because the interests of Fischhoff et al. and Barton et al. were no longer adverse to each other, and Monsanto had all available information to make an informed decision of priority between the two commonly owned applications. In response, Monsanto stated that a public interest exists in deciding all of the issues among parties in interest relating to a single patentable invention in a single *inter partes* proceeding before the Board.

The Board found that Monsanto had not shown good cause why the interference should be continued with both of the commonly owned applications, and issued a show cause order why judgment should not be entered against Monsanto. Monsanto again argued that the count was indefinite, rendering it impossible for Monsanto to make a rational election between the two commonly owned applications. Monsanto asked that the imposition of the requirement that it, as the common assignee, elect between the applications be postponed until after the decisions on the preliminary motions resolving the issue of the content of the count.

The Board held that Monsanto had not shown good cause to continue the three-party interference because it had not shown that the count needed to be modified or that there were separately patentable inventions involved in either application. Based on this order, Monsanto elected to proceed with Fischhoff et al. and entry of judgment against Barton et al. was deferred until the final hearing of the interference. Monsanto petitioned the Commissioner for review of the order under 37 C.F.R. § 1.644(a)(1) and (3), asserting the same arguments of indefiniteness of the count and its uncertainty concerning the applicable legal standard for a priority determination in biotechnology cases.

Adang et al. responded that "[e]ven if the count is indefinite (which it is not), there is only one invention involved in this interference and the parties—including Monsanto—know perfectly well what it is." Also, Adang et al. responded that "[t]he burden of determining what law applies rests on Monsanto. The simultaneous conception and reduction to practice 'rule' is a well known concept in interference law." Adang et al. asserted that the possibility that the content of the count will change through preliminary motions is not of the ilk of the rare circumstances for continuing the three party interference because "[o]riginal counts are often changed as the result of decisions on preliminary motions, but the changes almost always result in counts that embrace the same basic invention."

On petition to the Commissioner, Chief

Administrative Patent Judge Stoner[1] found that even if "Monsanto is correct that the count is indefinite, that supposed indefiniteness does not amount to the requisite 'good cause.' ... Monsanto need only compare the inventions in its own applications to decide which is prior." *Barton v. Fischhoff v. Adang,* Patent Interference No. 103,781, slip op. at 13 (BPAI March 26, 1997). Chief Administrative Patent Judge Stoner further found that:

> In the absence of a showing of good cause, all obligations associated with that ownership status, including the obligation of determining what law applies to the facts at hand, are those of the owner. Monsanto has not shown that documentary evidence relevant to priority as between Barton and Fischhoff is unavailable to Monsanto. Nor has Monsanto shown that any witnesses are unavailable or uncooperative.

*Id.* Chief Administrative Patent Judge Stoner concluded that "Monsanto's contentions fall far short of establishing either that this is an extraordinary situation or that justice requires suspension or waiver of 37 C.F.R. § 1.602(a)," denied relief, and did not allow postponement of election until after preliminary motions. *Id.* Monsanto, however, moved to have judgment entered against Barton et al. immediately, which the Board granted. Monsanto appeals from this decision to enter judgment against Barton et al.

## DISCUSSION

### I.

■ Although neither Monsanto nor Mycogen has challenged our jurisdiction to review the Board's decision, this court "has the duty to determine its jurisdiction and to satisfy itself that an appeal is properly before it." *Woodard v. Sage Prods., Inc.,* 818 F.2d 841, 844, 2 USPQ2d 1649, 1651 (Fed.Cir. 1987) (in banc). Under 28 U.S.C. § 1295(a)(4)(A), this court has exclusive jurisdiction of an appeal from "a decision" of the Board. Although this provision does not expressly require "a *final* decision" for appellate jurisdiction, this court has held that

§ 1295(a)(4) should be read to incorporate a finality requirement. *See Copelands' Enter., Inc. v. CNV, Inc.,* 887 F.2d 1065, 1067–68, 12 USPQ2d 1562, 1564–65 (Fed.Cir.1989) (in banc). We hold that the entry of judgment against Barton et al. is a final appealable decision without entry of final judgment in the underlying interference proceeding.

### II.

Monsanto argues that the Board's decision requiring election between Barton et al. and Fischhoff et al. without benefit of any information regarding Adang et al.'s alleged invention dates is contrary to the mandatory word "shall" in 35 U.S.C. § 135(a) (1994). Monsanto also argues that the plain meaning of 37 C.F.R. § 1.602(a) does not support the position that Monsanto must elect between its commonly owned applications, because it does not clearly address the situation where some, but not all, of the applications or patents in an interference are owned by a single assignee. Monsanto asserts that a controversy remains between Barton et al. and Adang et al., as well as between Fischhoff et al. and Adang et al.

Lastly, Monsanto again asserts that it has shown "good cause" to retain Barton et al. as a party because the count is indefinite. In fact, Monsanto points out, both Adang et al. and Fischhoff et al. have filed motions to substitute a different count. Monsanto asserts that Fischhoff et al.'s best proofs of conception lie outside of the literal language of the current, single count because it does not encompass modifications that remove only polyadenylation signals as claimed in claim 3 of the Fischhoff et al. application. Monsanto also asserts that because of the biotechnological nature of this invention, it is impossible for Monsanto to predict when conception occurred because it may be deemed an invention where conception cannot take place until reduction to practice when the inventors have demonstrated "more" expression in test plants of a gene modified according to the count. Therefore, Monsanto con-

---

1. The Commissioner has delegated decisions on petitions brought under 37 C.F.R. § 1.644 to the

Chief Administrative Patent Judge.

cludes that the incompleteness of the factual record on this matter establishes *prima facie* "good cause" for continuing a three-party interference.

Mycogen counters these arguments by asserting that the Commissioner has discretion whether to declare an interference from the plain meaning of the permissive word "may" in § 135(a).[2] Mycogen argues that this discretion should extend to the issue of whether to continue an interference that has already been declared.

Mycogen also states that the language of 37 C.F.R. § 1.602 applies equally well to the situation where a single party owns all of the applications or patents involved, and the situation where a single party owns some, but not all, of the involved applications or patents. Mycogen supports this interpretation of the regulation by pointing to Manual of Patent Examining Procedure (MPEP) § 2302 which states that when there is an interference with a third party, only the commonly owned application or patent having the earliest filing date is placed in an interference with the third party.

Mycogen asserts that Monsanto has not shown "good cause" under 37 C.F.R. § 1.602(a) to maintain the three-party interference. Mycogen again argues that "[e]ven if the count is not perfect, there is only one invention involved in this interference, and the parties know perfectly well what it is. Thus, Monsanto can easily make a rational choice between Barton et al. and Fischhoff et al., as it has, in fact, done." Mycogen notes that Monsanto has all of the proofs relevant to priority of invention in its possession and control. In fact, Mycogen asserts, Monsanto's determination that the elected party Fischhoff et al.'s "best" proofs of conception lie outside the literal language of the count establishes that Monsanto knows what the available proofs are and can make a rational decision as to priority. Also, Monsanto has not shown, according to Mycogen, that it is impossible for it to determine priority because of the supposedly unsettled law sur-

rounding simultaneous conception and reduction to practice.

### III.

Statutory construction is a question of law that we review *de novo*. *See Abbott Lab. v. Novopharm Ltd.*, 104 F.3d 1305, 1308, 41 USPQ2d 1535, 1537 (Fed.Cir.1997) (citing *Romero v. United States*, 38 F.3d 1204, 1207 (Fed.Cir.1994)). The statutory basis for declaring an interference, 35 U.S.C. § 135(a) (1994), reads

> Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, an interference may be declared.... The Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability.

The plain meaning of this statute is clear from the use of the permissive term "may" that the Commissioner has discretion whether to declare an interference. *See In re Alappat*, 33 F.3d 1526, 1531, 31 USPQ2d 1545, 1547 (Fed.Cir.1994) (in banc) ("When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails in the absence of clearly expressed legislative intent to the contrary.") Once the interference is declared the statute states that the Board shall determine questions of priority. This authority for the Board to determine questions of priority, however, does not vitiate the Commissioner's discretion to begin or discontinue an interference once declared. The mandatory language only instructs the Board of its jurisdiction over an active interference.

### IV.

Monsanto does not attack the legitimacy of 37 C.F.R. § 1.602(a), promulgated by the Commissioner under 35 U.S.C. § 135(a), but its application to a multi-party interference. Section 1.602(a) provides, "[u]nless good cause is shown, an interference shall not be declared or continued between (1) applica-

---

**2.** Mycogen argues that we should not address this issue because Monsanto did not raise it be-
low.

tions owned by a single party or (2) applications and an unexpired patent owned by a single party." 37 C.F.R. § 1.602(a) (1998).

■ The Commissioner interpreted this section as applying to a multi-party interference where all of the involved applications or patents are not commonly owned, and requiring election between the two commonly held applications or patents.[3] We must accept the Commissioner's interpretation of the regulations promulgated by the Patent and Trademark Office "unless it is plainly erroneous or inconsistent with the regulations." *Immigration & Naturalization Serv. v. Stanisic,* 395 U.S. 62, 72, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969) (citation omitted); *see also Kubota v. Shibuya,* 999 F.2d 517, 27 USPQ2d 1418 (Fed.Cir.1993).

■ The term "between" as used in the regulation can be reasonably interpreted to require election between commonly owned applications and/or patents unless good cause exists for both to continue in an interference. To read the regulation, as Monsanto urges, to require only the discontinuance of an interference between two commonly owned applications or patents only, without regard to the noncommonly owned application or patent, is a very narrow alternative reading. We hold that the Commissioner's interpretation is reasonable and consistent with the language of the regulation.

## V.

■ Monsanto also attacks the Commissioner's discretion in finding a lack of "good cause" to continue the interference.

A board decision pursuant to the permissive rules governing an interference is reviewed for abuse of discretion. . . . An abuse of discretion occurs if the decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record

that contains no evidence on which the Board could rationally base its decision. *Abrutyn v. Giovanniello,* 15 F.3d 1048, 1050–51, 29 USPQ2d 1615, 1617 (Fed.Cir.1994) (paragraphing and citations omitted).

Much ado is made of whether the case law cited by Mycogen to support its position that the interference should not be continued with Barton et al. is applicable under the "new rules." Monsanto urges that under the new rules after the merger of the Board of Appeals and the Board of Patent Interferences, it is preferred that the Board decide all controversies between the parties, including both priority and patentability, in an *inter partes* forum. We find that the case law is still applicable under the "new rules," but not dispositive of the case before us.

The Commissioner has generally declined to continue an interference when two applications (or patents) become commonly owned, finding a lack of "good cause." *See Morehouse v. Armbruster,* 209 USPQ 514, 516, 1980 WL 39055 (Com'r Pat. & Trademarks 1980) ("The fact that the final hearing has already been held is not considered to constitute good cause or such an exceptional situation as to warrant continuing the interferences."); *Malone v. Toth,* 202 USPQ 395, 396, 1978 WL 21306 (Cmm'r Pat & Trademarks 1978) ("The mere desire to have the Patent and Trademark Office decide the interference is not considered to constitute a showing of 'good cause' under 37 C.F.R. § 1.201(c), inasmuch as the burden of determining priority as between two commonly-owned cases involved in an interference rests upon their owner."); *Tunstall v. White,* 1926 C.D. 19 (Asst. Cmm'r for Patents 1924) (placing burden on owner of both applications to determine priority). The only case in which the Commissioner has found "good cause" to continue an interference with commonly owned applications is *Sprague v. Howe,* 1925 C.D. 115 (Cmm'r of Patents 1924), a case involving a three-party interference.[4] The

---

3. The Commissioner previously expressed a similar interpretation of this section by the following statement in the MPEP: "Where an interference with a third party is found to exist, the commonly owned application having the earliest effective filing date will be placed in interference with the third party." MPEP § 2302 (6th ed.1997).

4. *Sprague* was decided under a slightly different regulation than 1.201(c) requiring a party of commonly owned applications or patents to show cause why the designated claims should not be eliminated from all but one of its applications or patents.

Commissioner found that where a common assignee is unable to determine which of the assignors is the prior inventor, because the common assignee was unable to obtain information from the inventors of one of the assigned applications absent an order from a competent court, good cause existed to continue the three-party interference.

It is true that Monsanto has not alleged that any information, as in *Sprague,* is unavailable to it on the Barton et al. application. Monsanto, however, was forced to elect between its two commonly owned applications shortly after the interference began, before a decision on the preliminary motions, and before discovery was complete. Both Adang et al. and Fischhoff et al. filed preliminary motions to substitute for the count. "The purpose of the count is to determine what evidence is relevant to the issue of priority." *Case v. CPC Int'l, Inc.,* 730 F.2d 745, 749, 221 USPQ 196, 199 (Fed.Cir.) (citation omitted), *cert. denied,* 469 U.S. 872, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984). Therefore, at the time that Monsanto was forced to make an election between the Barton et al. and the Fischhoff et al. applications, it was not clear what the content of the final count would be or what proofs on dates of conception and reduction to practice Adang et al. would seek to establish. Also, if the final count as decided by the Board excluded subject matter disclosed in Barton et al., but not Fischhoff et al., Monsanto loses arguably patentable subject matter by early dismissal of Barton et al.

At this stage of the proceedings, Monsanto could not determine which application, either Barton et al. or Fischhoff et al., would be the best evidence to establish priority. We hold that Monsanto has shown "good cause" to continue the interference on both its applications until the preliminary motions to finalize the count are decided by the Board and discovery is complete.

### CONCLUSION

For the reasons set forth herein, we reverse and remand the case to the Board to continue the three-party interference until the Board determines the final count and discovery is complete.

*REVERSED AND REMANDED.*