**Eric S. ABRUTYN and Robert J. Sloan, Appellants,**

v.

**Rocco GIOVANNIELLO, Appellee.**

**Nos. 93–1248, 93–1249.**

United States Court of Appeals, Federal Circuit.

Jan. 27, 1994.

MICHEL, Circuit Judge.

Eric Abrutyn and Robert Sloan, through their assignee Somerville Technology Group (STG), appeal the December 18, 1992 default judgment of the Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board), awarding the subject matter of the counts of two related interferences, Nos. 102,895 and 102,896, to Rocco Giovanniello. Abrutyn and Sloan failed to file a preliminary statement or preliminary motion by the deadline for doing so or for two months thereafter. Because of the presumption that the senior party, Giovanniello, made the invention first, the Board awarded the subject matter of the counts to him. Since STG, as the assignee of record, clearly had standing under PTO rules to file papers during the latter two months, we cannot say on this record the Board abused its discretion in entering the default judgment. Therefore, we affirm.

## BACKGROUND

In 1987 Eric Abrutyn and Robert Sloan, inventors named in U.S. patent No. 4,859,446 (the Abrutyn patent), assigned their interest in that patent to Wickhen Products, Inc., which recorded the assignment in the PTO. In 1988 Dow Corning Corporation acquired Wickhen and included that company in its Huguenot Division. However, Dow failed to record in the PTO an assignment of the Abrutyn patent from Wickhen to it.

On July 15, 1992, STG purchased the Huguenot Division and received from Dow an assignment of the Abrutyn patent. STG recorded that assignment in the PTO on September 22, 1992, but the recording was ineffective due to the missing link in the chain of title, specifically the assignment from Wickhen to Dow which had never been recorded.

Meanwhile, on July 14, 1992, the PTO declared the two related interferences between the Abrutyn patent and two Giovanniello applications, serial nos. 07/409,654 and 07/215,639. Based on filing dates, Abrutyn and Sloan were named the junior party and Giovanniello the senior party in both interferences. The parties were given until October 14,

Chris Doninger, Glynn & Byrnes, Flemington, NJ, argued for appellants. With him on the brief was Kenneth P. Glynn.

Anthony L. Lagani, Jr., P.C., Morristown, NJ, argued for appellee.

Fred E. McKelvey, Sol. and Richard Torczon, Asst. Sol., Office of the Sol., Arlington, VA, were on the brief for amicus curiae, Com'r of Patents and Trademarks.

Before ARCHER, MICHEL and SCHALL, Circuit Judges.

1992 to file preliminary motions and statements.

The PTO mailed the notices declaring the interferences to the attorneys of record for the Abrutyn patent, including Lewis Gould. Gould contacted Dow which first instructed him to designate himself as lead attorney. After Gould had filed as lead attorney, Dow informed him of the sale to STG. Accordingly, on July 28, 1992, Gould sent a letter to Paul Plourde, attorney for STG, advising him of the interferences. Gould also filed a motion in the PTO to remove himself as lead attorney due to the assignment of the patent and served a copy on Plourde. The motion was granted on September 23, 1992 but the other original attorneys remained of record.

In his motion to be removed as lead attorney, Gould requested that the examiner-in-chief (EIC) "provide [STG], the new owner of the '446 patent additional time for designating its Lead Attorney." The EIC denied this request. Because PTO records still indicated Wickhen as the assignee, under the PTO rules STG was a non-party and the EIC could not "communicate" with a non-party by granting STG an extension of time. Because the assignment of the Abrutyn patent from Wickhen to Dow had not been effectively recorded in the PTO and because STG's attorneys were not of record, STG could not officially participate in the interferences until the situation was rectified.

Dow recorded an assignment from Wickhen to Dow on October 5, 1992. On October 19, 1992, STG recorded its assignment from Dow to STG in the PTO. Thus, by October 19 STG, as the assignee of record, had standing under PTO rules to file papers in the two interferences. However, the deadline for filing preliminary papers had already passed.

On December 18, 1992, the Board issued a final judgment awarding the subject matter of the counts in both interferences to Giovanniello. Since a rebuttable presumption exists that the inventors made their invention in accordance with the order of their filing dates, the Board rendered judgment based on the parties' filing dates. Consequently, STG, the assignee of the Abrutyn patent, lost that patent which was cancelled.

STG had filed a petition *ex parte* with the Commissioner to redeclare the interferences on December 15. The EIC dismissed that petition as moot on January 28, 1993, stating that the petition was not provided for in the rules and contained nothing that would require a change in the December 18 judgment. On appeal, STG does not challenge this dismissal or the failure of the Commissioner to act on the petition earlier.

Abrutyn executed a new assignment to Wickhen on December 17, 1992 to correct the original assignment which erroneously listed Wickhen as a New York rather than a Delaware corporation. Wickhen then executed a new assignment to Dow on December 18, 1992 and on January 4, 1993, Dow executed a new assignment to STG to correct the entire chain of title. These corrected assignments, however, were not recorded in the PTO.

Abrutyn and Sloan, through their assignee, STG, appealed the default judgment entered by the Board.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A) (1988) and 35 U.S.C. § 141 (1988).

## ANALYSIS

### I. Standard of Review

 The Board or EIC may impose an appropriate sanction, including granting judgment in an interference, against a party who fails to comply with the rules governing interferences, including filing deadlines. 37 C.F.R. § 1.616 (1993). A board decision pursuant to the permissive rules governing an interference is reviewed for abuse of discretion. *Gerritsen v. Shirai*, 979 F.2d 1524, 1527–28, 24 USPQ2d 1912, 1915–16 (Fed.Cir. 1992) (vacating default judgment in interference for abuse of discretion). Thus, we review the Board's decision to enter the December 18 default judgment for an abuse of discretion.

 An abuse of discretion occurs if the decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record that contains no evidence on which

the Board could rationally base its decision. *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986).

## II. Appellant's Argument of Abuse of Discretion

STG argues that the Board "acted in inappropriate haste in granting judgment on the interferences without ... first allowing all interested parties a chance to take action." Appellant's Brief at 13. According to STG, as a result of the defective chain of title, it was unable to file any papers and protect its interests during the time for filing preliminary papers and even until the Board issued the default judgment.

STG is correct in its assertion that it was not permitted to communicate with the EIC before the October 14 deadline. Relying on 37 C.F.R. § 1.32 (1992), the EIC would not accept a designation of attorney from STG while STG was not the assignee of record because only the assignee of record was entitled to participate in PTO proceedings to the exclusion of the inventor.[1] Thus, only the original attorneys of record who were not lawyers for STG were able to file papers in the PTO.

█ Nevertheless, STG was not completely powerless to protect its interests in the interference proceedings. Gould informed STG's attorney of the interference in the July 28 letter, so STG had actual notice of the interference early in the proceedings. In spite of this notice, STG states on appeal that it assumed that Dow would prosecute the interference based only on Dow's general commitment, made in the context of the sale to STG, to fully cooperate in patent matters after the sale. Because prosecution of an interference entails substantial proactive steps far exceeding mere cooperation, this explanation is insufficient to satisfy STG's responsibility to exercise due diligence in

protecting its patent rights. Certainly an essential first step in doing so would have involved immediately initiating an explicit discussion of the matter with Dow to confirm that Dow's lawyers would prosecute the interferences for STG. This STG did not do.

Although STG could not communicate with the EIC before it became the assignee of record, it was free to do so after October 19. STG contends, however, that it could not act until January 4, 1993, when Dow corrected minor defects in the chain of title by executing an assignment to STG based on a corrected assignment from Abrutyn to Wickhen showing Wickhen as a Delaware corporation.

This contention rings false. First, by its own admission, STG became the assignee of record as of October 19. Therefore, it met the requirements of 37 C.F.R. § 1.32 on that date. Moreover, the PTO records show that by the time of the default judgment STG's assignment from Dow, and Dow's assignment from Wickhen, had been properly recorded in the PTO. See Brief for *Amicus Curiae* Commissioner of Patents and Trademarks at 3–4. Finally, STG never recorded the January 4 assignment in the PTO, so it could not have affected STG's rights to participate in the interference proceedings before or after January 4.

Because the Board did not issue its default judgment for nearly two months after STG became the assignee of record, STG had ample time to protect its rights. An EIC has broad discretion to consider late filings submitted with a motion showing sufficient cause for delay. 37 C.F.R. § 1.645(b) (1993). Accordingly, STG could have filed a preliminary statement with a Rule 1.645(b) motion, but it did not. We cannot say that the Board abused its discretion in entering judgment for Giovanniello in the face of STG's unexplained inaction for two months after becoming the assignee of record.

---

1. 37 C.F.R. § 1.32 stated, "[t]he assignee of record of the entire interest in an application for patent is entitled to conduct the prosecution of the application to the exclusion of the inventor." That rule has been removed and reserved, but it was still in effect during the proceedings at issue. Changes in Patent and Trademark Assignment Practice, 57 Fed.Reg. 29642 (1992). Presumably the EIC could have also relied on § 1.643(a) which states, "[a]n assignee of record in the [PTO] of the entire interest in an application or patent involved in an interference is entitled to conduct prosecution of the interference to the exclusion of the inventor." 37 C.F.R. § 1.643(a) (1993). Indeed, the latter provision seems more directly applicable.

STG points out that although the EIC recognized that issues regarding the proper ownership of the Abrutyn patent existed, he took none of the available procedural steps to protect STG. The EIC did not issue an order to show cause why judgment should not be entered against Abrutyn as permitted under 37 C.F.R. § 1.640(d)(2) (1993) when a junior party fails to file a preliminary statement. Neither did the Board hold a final hearing to allow STG to raise the new issue of its ownership, as permitted under 37 C.F.R. § 1.655(b) (1993). But neither provision is mandatory on its face. Nor can we say that the EIC or Board had a duty to utilize either provision on the facts here.

We therefore conclude that it was not an abuse of discretion for the Board to enter judgment without the EIC or the Board having taken these actions on their own initiative. It was STG's responsibility to act diligently to protect its rights in an interference proceeding. Moreover, the Board delayed responding to the apparent default for nearly two months after STG became the assignee of record, giving STG sufficient time to act. Although in some circumstances the Board may be required to conduct a hearing or to see that the EIC has issued an order to show cause before it enters a default judgment, the facts here do not raise such a requirement. STG had actual notice, a recorded assignment and two months grace, but it did not file the overdue papers.

## III. The PTO's Position

The Commissioner of Patents and Trademarks, while maintaining that the EIC omissions were not improper, nevertheless requests that these interferences be remanded so that the Board may vacate its default judgment and proceed with the interferences on the merits. According to the Commissioner, the Board would now decide this case differently in light of guidance provided in *Gerritsen*. Brief for *Amicus Curiae* Commissioner of Patents and Trademarks at 10.

We decline to grant the Commissioner's request for two reasons. First, absent a determination that the Board abused its discretion in entering the default judgment we cannot properly vacate the Board's judgment and remand these interferences simply because the Board may have a change of heart. The PTO is not a party here. Its recommendation, even if workable, cannot control. Although the Commissioner and STG agree that the Board's default judgment should be vacated, Giovanniello vehemently disagrees. He is entitled to a fair evaluation of the Board's decision under the usual standard of review. As explained above, we hold that no abuse of discretion occurred here.

Secondly, *Gerritsen* does not require a different result. Nor does it even support a conclusion that the Board abused its discretion in this instance. The Board sanctioned interference party Gerritsen and Aerts because they did not comply with 37 C.F.R. § 1.662(b). That regulation requires that a patentee involved in an interference who files a reissue application must file a preliminary motion to add the reissue application to the interference or show good cause why that motion could not have been filed. *Gerritsen*, 979 F.2d at 1529–30, 24 USPQ2d at 1916–17. The Board, we held, did not abuse its discretion in determining that Gerritsen and Aerts' failure to comply was sanctionable. *Id.* at 1531, 24 USPQ2d at 1918. Nevertheless, we did hold that the Board abused its discretion in selecting as the sanction an order that Gerritsen and Aerts were not entitled to the reissue patent claims. We did so because the fact findings underlying the Board's selection of this sanction were clearly erroneous.[2] *Id.* at 1532, 24 USPQ2d at 1918.

In contrast to *Gerritsen*, the Board's decision here is not based on erroneous fact findings. Indeed, here the critical facts are undisputed. That STG knew of the interference in late July and that STG became the assignee of record two months before judgment was entered support the Board's actions. Moreover, under 37 C.F.R. § 1.616

---

**2.** The Board found that Gerritsen and Aerts attempted to circumvent the Board's authority by failing to add the reissue application to the interference. However, the facts clearly showed that Gerritsen and Aerts did not intentionally violate the regulation. *Id.* at 1531, 24 USPQ2d at 1918. The Board also clearly erred in finding that the opposing party, Shirai, and the public were prejudiced by Gerritsen and Aerts' failure to submit a belated motion. *Id.*, 24 USPQ2d at 1918.

the Board undeniably had discretionary authority to enter judgment for Giovanniello when STG failed to comply with the rules governing interferences and, therefore, committed no legal error by doing so. Therefore abuse of discretion based on unreasonableness is the only infirmity that can even be argued here.

Although agreeing that the EIC and the Board neither committed legal error nor abused their discretion, the Commissioner nevertheless argues that we should vacate the Board's judgment because loss of a patent is a harsh penalty for the "minor procedural misstep" here. It is true that loss of patent rights, like dismissal with prejudice of a civil action, is a sanction which may sound the death knell for important rights and interests. *Id.* at 1532 n. 12, 24 USPQ2d at 1918 n. 12. As we noted in *Gerritsen,* such dismissals should be used as "a weapon of last, rather than first, resort." *Id.* at 1532, 24 USPQ2d at 1918 (quoting *Maggette v. Dalsheim,* 709 F.2d 800, 803 (2nd Cir.1983)). "Before sustaining a dismissal order, appellate courts have consistently required a showing of egregious behavior, such as willful misconduct, bad faith, or fraud, and have often considered less severe sanctions." *Id.,* 979 F.2d 1524, 24 USPQ2d at 1918 (citations omitted). Therefore, we suggested, in analogous situations the Board should consider other sanctions and their possible sufficiency to protect the particular interests involved. But that is not to say, however, that default must be shown to be the only sufficient sanction before it can be imposed. Indeed, discretion implies a range of permissible choices. As long as the tribunal's choice falls within a reasonable range, it cannot constitute an abuse of discretion.

Therefore, we will not overturn the selection of a sanction, permissible in fact and law, unless it is clearly unreasonable. *Gerritsen* gives guidance as to what is unreasonable. In view of the inaction of STG in this case and Giovanniello's legitimate business interest in seeing resolution of his potential patent rights, and given that the PTO and the public have a real and legitimate interest in expediting interference proceedings according to the orderly application of PTO regulations, we cannot say that the default judgment entered by the Board here is so unreasonable that it amounts to an abuse of discretion. STG's failure to take any appropriate action for two months after the deadline and after becoming the assignee of record, in further view of STG's early knowledge of the interference proceedings, cannot be characterized as "a minor procedural misstep" or an inadvertent omission. The Board could have reasonably concluded that STG's deliberate inaction was egregious behavior which made appropriate imposition of a default judgment for Giovanniello because lesser sanctions would not have effectively protected the PTO's interests. Those interests include creating sufficient deterrence for like cases in the future.

Thus, the Board's judgment was not clearly unreasonable. We therefore decline to accept the Commissioner's suggestion that the interferences be reopened.

## CONCLUSION

The Board did not abuse its discretion in entering default judgment against Abrutyn and Sloan for failure to file preliminary papers in the two interferences at issue during the period for doing so or two months thereafter. Because the assignee STG knew to take steps to protect its interest before becoming the assignee of record, and because STG took no appropriate action for nearly two months after becoming the assignee of record, we conclude that the Board's action is not clearly unreasonable. Nor, in contrast to *Gerritsen,* was the decision here based on clearly erroneous fact findings.

***AFFIRMED.***