# United States Court of Appeals
# for the Federal Circuit

---

**IN RE: TIMOTHY D. DURANCE, JUN FU,
PARASTOO YAGHMAEE,**
*Appellants*

---

2017-1486

---

Appeal from the United States Patent and Trademark
Office, Patent Trial and Appeal Board in No. 12/682,989.

---

Decided: June 1, 2018

---

JONATHAN KENNEDY, McKee, Voorhees & Sease,
P.L.C., Des Moines, IA, argued for appellants. Also
represented by KIRK M. HARTUNG, MICHAEL GILCHRIST,
ROBERT SCOTT JOHNSON, CHRISTINE MARIE LEBRON-
DYKEMAN.

MARY L. KELLY, Office of the Solicitor, United States
Patent and Trademark Office, Alexandria, VA, argued for
appellee Andrei Iancu. Also represented by NATHAN K.
KELLEY, THOMAS W. KRAUSE, PHILIP J. WARRICK.

---

Before LOURIE, REYNA, and CHEN, *Circuit Judges.*

REYNA, *Circuit Judge.*

Timothy D. Durance, Jun Fu, and Parastoo Yaghmaee
appeal from a decision by the Patent Trial and Appeal

Board affirming an examiner's obviousness rejection of their patent application claims related to a microwave vacuum-drying apparatus and method. Because the Board failed to consider arguments in applicants' reply brief that were properly made in response to the examiner's answer, we vacate the Board's determination of obviousness and remand for the Board to consider applicants' reply-brief arguments in the first instance.

BACKGROUND

A. The '989 Application

On April 14, 2010, inventors Durance, Fu, and Yaghmaee (together, "Durance") filed Patent Application No. 12/682,989 ("'989 application") with the United States Patent and Trademark Office. Durance filed the '989 application as part of the national stage of the Patent Cooperation Treaty pursuant to 35 U.S.C. § 371. J.A. 663. The '989 application is directed to improved methods and apparatuses for "microwave vacuum-drying of organic materials, such as food products and medicinal plants." J.A. 673. It describes dehydrating organic material, such as fruits and berries, by placing the material in a container, transferring the container to a vacuum chamber, and rotating the container as it moves through the vacuum chamber while applying microwave radiation to the organic material. J.A. 685.

Independent claim 1 is representative of the apparatus claims and provides:

> 1. An apparatus for dehydrating organic material, comprising:
>
>> (a) a vacuum chamber having an input end for introduction of a container for the organic material into the vacuum chamber and a discharge end for removal of the container;

(b) a microwave generator;

(c) a microwave-transparent window for transmission of microwave radiation from the microwave generator into the vacuum chamber;

(d) means for reducing pressure inside the vacuum chamber;

(e) means for loading the container into the input end of the vacuum chamber;

(f) *means for rotating the container inside the vacuum chamber so as to tumble the organic material in the container*;

(g) means for moving the rotating container through the vacuum chamber from the input end to the discharge end thereof; and

(h) means for unloading the container of dehydrated organic material from the vacuum chamber at the discharge end thereof.

J.A. 106 (emphasis added). Independent claim 16 is representative of the method claims. J.A. 109. It recites a method of dehydrating organic material using an apparatus like that described in claim 1, including a step for "rotating the container inside the vacuum chamber so as to tumble the organic material in the container." *Id.* At issue in this appeal is the above-emphasized "means for rotating . . . so as to tumble" limitation, which we refer to as the "tumbling limitation."

Figure 4 depicts the claimed apparatus:



FIG. 4

J.A. 703. As shown in Figure 4 and described in the '989 application's specification, piston 114 pushes the containers into vacuum chamber 22 from input end 30. J.A. 680. Inside the vacuum chamber, the containers are rotated about their longitudinal, horizontal axes in rotatable cage 64 using ring gears 66 and 68, which are engaged by a motorized gear set. J.A. 679.

Figure 5 depicts the interior of the vacuum chamber, including the interior of a container and motorized gear set 76 and 78 that actuate ring gear 66:



FIG. 5

J.A. 704. The interior of the container shows divider walls 146 that "divide the interior space into four segments, to promote the tumbling of the materials in the baskets, as the baskets rotate in the vacuum chamber." J.A. 684.

## B. Prior Art

### 1. Wefers

U.S. Patent No. 6,442,866 ("Wefers") "relates to a method and apparatus for drying or heat-treating substances or products at a pressure other than atmospheric pressure." J.A. 847. Wefers teaches drying food products, like fruit and berries, by loading "transport receptacles" containing the food products into a "treatment chamber" operating at reduced atmospheric pressure, in which the food products are exposed to a heating source, including a microwave source. *Id.*; *see* J.A. 852 col. 2 ll. 51–65; J.A. 853 col. 3 ll. 61–66.

### 2. Burger

U.S. Patent Application Pub. No. 2005/0019209 ("Burger") is directed to a method and apparatus for

"sterilizing containers in which a plasma treatment is executed through excitation of an electromagnetic oscillation so that the plasma is excited in a vacuum in the vicinity of the container regions to be sterilized." J.A. 875. Burger teaches that the containers to be sterilized are inputted into a chamber "with a transport apparatus inside it, which produces an essentially rotating motion of the container during the transport from the arrival to the discharge in the chamber." *Id.* The containers to be sterilized include "ampules, septic glass containers, syringes, vials, and other so-called parenteralia packages, or in beverage bottles." J.A. 881.

Figure 1 of Burger shows a schematic view of the sterilization device:



Fig.1

J.A. 876. And Figure 2 shows the transportation of the containers on two rollers 10 and 11, which rotate the containers as they move through the device:



Fig.2

*Id.* According to the written description, rotating the containers through the vacuum chamber during transportation allows for all regions of the containers to be subjected to plasma "in the same manner." J.A. 883.

In addition, Figures 6 and 7 of Burger show the arrangement of a container 2 inside an inclined rotating tube 24, as follows:



Fig.7                                        Fig.6

J.A. 878, 884. In this embodiment, the plasma source is located in the center of the tube, and "[t]he tube is driven around a rotation axis that is oriented horizontally in the transport direction in such a way that the containers can

be rotated past the launch region of the plasma source and transported at the same time." J.A. 882.

### C. Proceedings Before the Patent Office

On September 24, 2014, the examiner issued a Final Office Action rejecting all of Durance's 37 claims. J.A. 144–64. Relevant to this appeal, the examiner rejected claims 1–13, 16–23, and 26–35 as obvious under 35 U.S.C. § 103(a)[1] over Wefers in view of Burger, as well as other tertiary references that recite additional features.[2] J.A. 146. The examiner found that Wefers discloses every limitation of representative claim 1 except the tumbling limitation. J.A. 147–48. Relying on Figure 1 of Burger, the examiner found that Burger fills this gap by teaching "a concept of simultaneous rotation and transport of the

---

[1] Congress amended § 103 when it passed the Leahy-Smith America Invents Act (AIA). Pub. L. No. 112–29, § 3(c), 125 Stat. 284, 287 (2011). Because the present application does not contain a claim having an effective filing date on or after March 16, 2013 (the effective date of the statutory changes enacted in 2011), or a reference under 35 U.S.C. §§ 120, 121, or 365(c) to any patent or application that ever contained such a claim, the pre-AIA § 103 applies. *Id.* § 3(n)(1), 125 Stat. at 293.

[2] Specifically, the examiner rejected (1) claims 1–6, 12, 16–20, 26–29, 31, and 33–35 as obvious over Wefers in view of Burger, (2) claims 7, 9, 10, 21, 30, and 32 over Wefers in view of Burger and U.S. Patent No. 4,169,408 ("Mencacci"), (3) claims 8, 22, and 23 over Wefers in view of Burger and U.S. Patent No. 3,308,332 ("Bibb"), (4) claim 11 over Wefers, Burger, Mencacci, and U.S. Patent No. 1,969,101 ("Semon"), and (5) claim 13 over Wefers in view of Burger and Semon. J.A. 4. The examiner's and Board's application of Mencacci, Bibb, and Semon are not at issue in this appeal.

containers" into a vacuum chamber and subjecting the containers to a microwave source. J.A. 148. Next, referencing Figures 6 and 7, the examiner stated that Burger teaches a means for rotating the container using "rotatable cage 24" that is "configured to receive the container." J.A. 149. The examiner thus found it would have been obvious for a person of ordinary skill in the art to modify Wefers in light of Burger to include the tumbling limitation "for the purpose of balanc[ing] out the microwave radiation on the surfaces of the container over the treatment time." J.A. 149, 151–52. In addition, the examiner rejected Durance's assertion that rotating the container to enhance tumbling of the organic material is a function not present in the combination of Wefers and Burger, stating that the organic material inside the containers "will tumble when the container is in rotation" as "merely an inherent function of all rotating containers." J.A. 161.

The examiner also issued a rejection of claims 1–13, 16–23, and 26–35 for failing to meet the written description requirement and for lack of enablement under 35 U.S.C. § 112. J.A 145. The examiner found that the claim language "so as to tumble the organic material in the container" was not supported by the original specification. J.A. 145–46. Specifically, the examiner noted that "[n]owhere in the original filed specification does the applicant discuss or mention anything about rotational speed to enable such newly added functional limitation. Moreover the original specification does not disclose what causes this newly added limitation to function." J.A. 146.

Following the Final Office Action, Durance filed an amendment after final rejection pursuant to 37 C.F.R. § 1.116 and a request for further consideration.[3] J.A. 128.

---

[3] The request for further consideration was part of the "After Final Consideration Pilot Program 2.0," a

The amendment did not modify claim 1 but added language to method claim 16 to require "applying microwave radiation <u>to the tumbling organic material</u> to dehydrate the organic material." J.A. 129, 132. Durance argued that neither Wefers, Burger, nor the combination of these two references teach tumbling organic material. J.A. 138–39. Durance contended that the examiner's rejections should be withdrawn because "merely teaching rotation of a container is not sufficient to teach tumbling of any materials within the container." *Id.* Durance also argued that the examiner's § 112 rejections were improper and pointed to portions of the specification to support the "so as to tumble the organic material in the container" claim language. J.A. 137–38. Specifically, Durance pointed to paragraph 36 of the '989 application's specification, which states that the divider walls within the container "divide the interior space into four segments, to promote the tumbling of the materials in the baskets, as the baskets rotate in the vacuum chamber." J.A. 137.

On December 23, 2014, the examiner held an interview with Durance's attorney. J.A. 123. Following the interview, the examiner withdrew her § 112 rejections based on Durance's remarks, which included statements about the divider walls' role in the tumbling of the mate-

---

program aimed to reduce patent pendency "by reducing the number of Requests for Continued Examination (RCE) and encouraging increased collaboration between the applicant and the examiner to effectively advance the prosecution of the application." 78 Fed. Reg. 29,117, 29,118 (May 17, 2013). The program is currently set to sunset on September 30, 2018. After Final Consideration Pilot 2.0, United States Patent and Trademark Office, https://www.uspto.gov/patent/initiatives/after-final-consideration-pilot-20.

rials.  *Id.*  The examiner, however, maintained her final obviousness rejection, stating that "because Burger is used by the examiner for the teaching of a transportation means which rotates the container and moves the rotating container thr[ough] the vacuum chamber from the inlet to the outlet, . . . [t]he material in the container will be tumbled."  *Id.*  In making this finding, the examiner referenced Figure 8 of Burger, which shows containers rolling down an inclined plane through the vacuum chamber and rotating around their longitudinal axes, as follows:



Fig.8

J.A. 878, 884.  The examiner thus rejected Durance's request for further consideration on the ground that the after final amendment would not overcome the rejections set out in the Final Office Action.  J.A. 124.

Durance appealed to the Board.  J.A. 114.  Durance argued that neither Burger nor Wefers taught the tumbling limitation, and that the combination of Wefers and Burger would not rotate the containers such that the tumbling of contents would inherently occur.  J.A. 102. Durance also challenged the examiner's use of Burger as analogous prior art, arguing that the reference only discusses applying plasma to the surface of containers, and that it "makes no teaching of rotating the cylinders in order to tumble material within the containers or to

balance out the microwave radiation applied to contents of the cylinders." *Id.* Durance advanced an argument that Wefers teaches away from agitating products during transportation because it stresses "gentle continual transport" to reduce maintenance expenses. J.A. 101.

In her answer, the examiner countered that "there is no structural difference between the claimed invention and the combined teachings of the prior art references." J.A. 85. Based on this structural identity argument, the examiner found that both the '989 application claims and Burger's use gravity to rotate the containers about their longitudinal axes within the vacuum chamber. *Id.* The examiner relied on paragraph 39 of the '989 application's specification, which provides:

> **[0039]** The airlock plate **104** is then raised, permitting the container to roll, under the force of gravity, into the input chamber **88**. The air cylinder **112** is actuated to move the piston **114** into the input chamber, pushing the container through the opening **90** in the end cover **28** and into the rotating cylindrical cage **64**, supported by and sliding along the longitudinal members **70**. The container **38** is rotated about its longitudinal axis by the rotation of the cylindrical cage **64**, tumbling the material in the container as the material is being dehydrated.

J.A. 685.[4] The examiner did not designate this structural-identity finding as a new ground of rejection.

---

[4]    Contrary to the examiner's assertion, this excerpt from the '989 application's specification describes using gravity only to place the container in the input chamber of

Durance challenged the examiner's structural-identity rejection in its reply brief. Durance explained that the Examiner's never-before articulated understanding of the corresponding structure from the '989 specification was extremely inaccurate: the structure of the '989 application clearly relied on gears and not gravity. J.A. 62. Specifically, Durance argued that the claimed tumbling limitation used motorized gears to rotate the containers in the vacuum. *Id.* Durance also argued that the divider walls within the container were internal structures not present in Burger or Wefers that promote the tumbling of the organic material. *Id.* Durance explained that "[i]n the present invention, unlike in Burger, gravity is not the means for rotating the container" and that "nothing in Burger or Wefers suggests any internal structures to promote tumbling." *Id.* As for method claim 16, Durance argued that a finding of structural identity does not apply to method claims, and therefore is "not sufficient to satisfy" the newly added amended limitation providing for "moving the rotating container through the vacuum chamber from the input end to a discharge end thereof while applying microwave radiation to the tumbling organic material to dehydrate the organic material." J.A. 62–63. Durance contended that tumbling depends on the speed of rotation of the container and the amount of packing of organic material inside the container. J.A. 63.

The Board sided with the examiner by affirming the obviousness rejection of claims 1–13, 16–23, and 26–35 based on the combination of Wefers and Burger.[5] First,

---

the apparatus; it does not describe using gravity to rotate the containers within the vacuum chamber. *See id.*

[5] The examiner had also rejected claims 14, 15, 24, 25, 36, and 37, which the Board reversed. These claims are not at issue in this appeal. *See* J.A. 34.

the Board found that the combination of Wefers's drying of organic material and Burger's teaching of rotating containers renders obvious the tumbling limitation, stating that Durance's argument only attacked the individual references and not the combination. J.A. 31. The Board then stated that "given the appropriate selection of rotation speed and material for the inner surface of the container, tumbling would be inherent." *Id.* In making these findings, however, the Board disregarded Durance's reply-brief arguments by citing 37 C.F.R. § 41.41(b)(2) and stating that these arguments were "not responsive to an argument raised in the Answer."[6] J.A. 33.

Durance sought rehearing from the Board. J.A. 51. In its rehearing request, Durance averred that the Board erroneously ignored its reply-brief arguments on structural identity, which it claims were made in direct response to the examiner's answer and provided citations. J.A. 53–55. Durance contended that the Board should have addressed its arguments that the claimed structure is different than the corresponding structure in Burger with respect to the features of motors, gears, and the divider walls that promote tumbling. J.A. 53. In failing to consider these arguments, Durance posited that the Board "misapprehend[ed] the law" on inherency "by finding that the combination of Wefers and Burger includes the claimed tumbling feature, even though such a feature is not necessary, but instead dependent [on the] appropriate selection of rotation speed and material for the inner surface of the container." *Id.* Durance further

---

6    Specifically, the Board declined to consider pages 2–4 of Durance's five-page reply brief, which contain all of Durance's arguments relating to the combination of Wefers and Burger.

argued that the Board improperly ignored its reply-brief argument that structural identity cannot be used to show that a method claim is inherently performed by a combination of prior art references. J.A. 55.

The Board denied Durance's request for rehearing. J.A. 44–48. In the denial, the Board stated that it did not rely on the doctrine of inherency to support its finding of obviousness based on the combination of Wefers and Burger. J.A. 45 ("As the doctrine of inherency was not invoked in the Examiner's rejection or relied upon in our Decision, we cannot have misapprehended the requirements of the doctrine."). The Board also reiterated that it would not consider Durance's reply-brief arguments, stating that Durance "did not provide such a showing or indicate where a new argument requiring such response was raised in the [examiner's] Answer." J.A. 46. However, "in the interest of fairness," the Board decided to consider Durance's argument in its reply brief that the amount of material packed into the container affects whether the material would tumble. J.A. 46–47. The Board, however, did not consider any of Durance's arguments relating to the divider walls within the container and their role in the promotion of tumbling.

Durance appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

STANDARD OF REVIEW

We review Board decisions in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2) (2012). *Dickinson v. Zurko*, 527 U.S. 150, 152, 165 (1999). Under the APA, we review the Board's legal conclusions de novo and its factual findings for substantial evidence. *ACCO Brands Corp. v. Fellowes, Inc.*, 813 F.3d 1361, 1365 (Fed. Cir. 2016). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Gartside*, 203 F.3d 1305,

1312 (Fed. Cir. 2000) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).

We review the Board's application of its procedural rules for abuse of discretion. *Eli Lilly & Co. v. Bd. of Regents of Univ. of Wash.*, 334 F.3d 1264, 1266–67 (Fed. Cir. 2003). An abuse of discretion occurs if the decision is clearly unreasonable, arbitrary, or fanciful; is based on an erroneous conclusion of law; rests on clearly erroneous fact findings; or involves a record that contains no evidence on which the Board could base its decision. *Abrutyn v. Giovanniello*, 15 F.3d 1048, 1050–51 (Fed. Cir. 1994).

## DISCUSSION

Durance raises two arguments on appeal. First, Durance argues that substantial evidence does not support the Board's finding that the combination of Wefers and Burger teaches the tumbling limitation either expressly or inherently. Second, Durance contends that the Board lacks substantial evidentiary support for its conclusion that a skilled artisan would modify Wefers to include the rotation feature that Burger discloses. Based on these two alleged factual errors, Durance argues that the Board's legal conclusion of obviousness is erroneous and requires reversal.

Throughout this examination, the Patent Office continually shifted its position on which Burger structures and what characteristics of those structures are the bases for the Office's grounds of rejection. In her September 24, 2014 Final Rejection, the examiner relied on the embodiments in Figures 1, 6, and 7 of Burger as teaching "a concept of simultaneous rotation and transport of the containers" and a means for rotating the container using "rotatable cage 24" that is "configured to receive the container." J.A. 151. But in her summary of a subsequent telephone interview on December 23, 2014, the examiner cited to paragraph 54 of Burger, describing the

embodiment in Figure 8 of Burger as disclosing the tumbling element of the claimed invention. Then, in her answer to the Board, the examiner discussed all four figures, but argued for the first time that there was no structural difference between the claimed invention and Burger Figure 8. The Board, for its part, did not identify which Burger embodiment it was relying on in either its Decision or its denial of Durance's request for rehearing. And finally, on appeal to this court, the Patent Office relies on yet another figure from Burger, Figure 10, as the true embodiment that matches Durance's disclosed structure. Appellee's Br. 9–10.

The Patent Office's discussion of inherency also resulted in moving target rejections for Durance to traverse. In her Final Office Action, the examiner rejected Durance's claims by finding tumbling to be "merely an inherent function of all rotating containers." J.A. 161. The Board similarly found that, "given the appropriate selection of rotation speed and material for the inner surface of the container, tumbling would be inherent." J.A. 31. And when Durance challenged this statement as an improper application of the inherency doctrine, the Board responded on rehearing that "[a]s the doctrine of inherency was not invoked in the examiner's rejection or relied upon in our Decision, we cannot have misapprehended the requirements of the doctrine." J.A. 45. On appeal, the Patent Office "[a]ssuming *arguendo*" that the Board's rejection was based on inherency, now makes a case for this court to find inherency in the first instance. Appellee's Br. 25–27.

Under these circumstances of multiple shifting articulations, this Court is not confident in the Patent Office's reasoning for its rejection of the Application, specifically as to which embodiment of Burger the Board relied on, and whether the Board relied on inherency as a basis for the tumbling function.

The examiner and Board's shifting reliance on Burger and on inherency obfuscated the issues before Durance, particularly regarding the issue of structural identity. As error, Durance points to the Board's failure to consider arguments in Durance's reply brief made in response to the examiner's answer. Appellants' Br. 24. Specifically, Durance argues that the Board should have considered its arguments that claim 1 of the '989 application "included the tumbling feature in means-plus-function language that was directed to structure different than the structure of *Burger*." *Id.* Durance also argues that the examiner's and Board's structural-identity findings cannot be applied to the method claims "because even the identical structure would not perform all the steps unless operated in the correct manner and used with a partially filled container." *Id.* We agree with Durance.

The Board relied on 37 C.F.R. § 41.41(b) to find waiver. Section 41.41(b)(2) outlines what content cannot be included in an applicant's reply brief. It provides in relevant part:

> Any argument raised in the reply brief which was not raised in the appeal brief, or is not responsive to an argument raised in the examiner's answer, including any designated new ground of rejection, will not be considered by the Board for purposes of the present appeal, unless good cause is shown.

Section 41.41(b)(2) permits a reply brief to respond to "an argument raised in the examiner's answer." In particular, nothing in this provision bars a reply brief from addressing *new* arguments raised in the examiner's answer that are not articulated in the Final Office Action, regardless of whether the examiner designated that new

argument as a "new ground of rejection."[7] To be clear, 37 C.F.R. § 41.39(a)(1) provides that "[a]n examiner's answer is deemed to incorporate all of the grounds of rejection set forth in the Office action from which the appeal is taken." Since the examiner's answer is deemed to incorporate all grounds in the Final Office Action, an applicant's reply may not respond to grounds or arguments raised in the examiner's answer if they were part of the Final Office Action and the applicant did not address them in the initial appeal brief. If an examiner's answer includes arguments raised for the first time, i.e., not in the Final Office Action, an applicant may address those arguments in the reply. 37 C.F.R. §§ 41.39, 41.41.

Here, the examiner's first clear representation that she was relying on structural identity, and not inherency, appeared in the examiner's answer. *See* J.A. 85. We agree with the Patent Office that there need not be talismanic words to indicate a ground of rejection. Appellee's Br. 28–29. But in this case, there is no mention of structural identity with Figure 8 of Burger before the examiner's answer. And the equivocal nature of the examiner's and Board's remarks throughout the examination of the '989 application, including whether inherency was the basis for the rejection, clouded the issues before Durance. Accordingly, Durance had no notice, prior to the examin-

---

[7]  *See* § 41.41 (precluding the Board from considering arguments that could have been brought in an applicant's appeal brief, including arguments responding to grounds of rejection present in the prosecution history before the filing of the appeal brief, unless good cause is shown).

er's answer, of this ground on which his application was being rejected.[8]

It was therefore proper under § 41.41(b)(2) for Durance to respond to the structural identity argument raised in the examiner's answer. The Patent Office contends that Durance should have petitioned to have the examiner's answer designated as a new ground of rejection, relying on the Patent Office's Manual of Patent Examination Procedure ("MPEP") § 1207.03. But this Court does not read MPEP § 1207.03 or 37 C.F.R. § 41.41 to put such a burden on applicants. Neither contemplates that the applicant has to petition to have a new argument in an answer designated as a new ground of rejection before it can respond to the new argument. Rather, § 41.41 states that a showing of good cause is only required if the argument is *not* responsive to an argument raised by the examiner. Here, Durance's reply brief was responsive to the examiner's answer and included citations indicating the new arguments to which Durance was responding. *See* J.A. 62–64. It was error for the Board to find such argument waived.

The fact that the tumbling limitation is part of a means plus function claim also plays a role in our conclusion. Under 35 U.S.C. § 112, ¶ 6,[9] a means-plus-function

---

[8]    The Patent Office's Manual of Patent Examination Procedure, at § 1207.03(a)(I)(4), provides that citing a new structure as support of structural obviousness is considered a new ground of rejection.

[9]    Congress amended § 112 when it enacted the Leahy-Smith America Invents Act ("AIA"). Pub. L. No. 112-29, § 4(c), 125 Stat. 284, 296 (2011). However, the amended version of § 112 applies only to patent applications "filed on or after" September 16, 2012. *See* AIA § 4(e), 125 Stat. at 297. Because the '989 application was

claim is "construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." Durance argues that the divider walls in the containers are required structures of the containers for the tumbling limitation, making the '989 application dissimilar from Burger. For support, Durance cites paragraph 35 of the '989 application's written description, which states:

> **[0035]** The container **38** is a basket made of high density polyethylene, with a cylindrical side wall **138**, a closed bottom wall **140** and a removable lid **142**. The side wall, bottom wall and lid are perforated by a plurality of holes **144** for the escape of water vapor from the organic material during the dehydration process. The basket has a plurality of support ribs **147** and a support ring **145**. Longitudinally-extending divider walls **146** divide the interior space into four segments, to promote the tumbling of materials in the bases, as the baskets rotate in the vacuum chamber.

J.A. 684. This structural dissimilarity argument by Durance, advanced in response to the examiner's answer, was fair game for the Board to consider under § 41.41. J.A. 62 ("The means includes gears 76 and 78 driven by motors 84 and 86. Furthermore divider walls 146 promote tumbling of the organic material when the container is rotated."). And the Board should therefore have considered it because it affects whether the combination of Wefers and Burger discloses the tumbling limitation.

---

filed before that date, on April 14, 2010, pre-AIA § 112 applies here. We note, however, that the substantive language involved has not changed from the pre-AIA version of the statute.

In this case, the Board's failure to review Durance's reply-brief arguments requires that we vacate the Board's decision and remand this matter to the Board. *See In re Bond*, 910 F.2d 831, 833–34 (Fed. Cir. 1990) (finding that, since "structural equivalency . . . is a question of fact," where the Board made no finding as to structural equivalency, this Court would "not reach that question in the first instance" and instead vacate and remand). On remand, we direct the Board to consider the arguments made in Durance's reply brief on: (1) whether the divider walls in the containers are a part of the claimed structure of the tumbling limitation under § 112; and (2) whether a structural identity rejection can be used to find a prima facie case of obviousness for method claims. Only after consideration of these arguments can the Board determine the patentability of the '989 application.

CONCLUSION

The purpose of § 41.41 is not to prevent an applicant from responding to new arguments raised for the first time in the examiner's answer. Because the Board should have considered the inherency-related arguments in Durance's reply brief, we vacate and remand for the Board to consider those arguments in the first instance.

**VACATED AND REMANDED**

COSTS

No costs.