# United States Court of Appeals for the Federal Circuit

---

**CHAD SHELLER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DANIEL ELIAS SHELLER,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2023-1746

---

Appeal from the United States Court of Federal Claims in No. 1:18-vv-00696-SSS, Judge Stephen S. Schwartz.

---

Decided: November 18, 2024

---

ANNE TOALE, Maglio Christopher & Toale, P.A., Sarasota, FL, argued for petitioner-appellant. Also represented by JENNIFER ANNE MAGLIO.

RACHELLE BISHOP, Torts Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, C. SALVATORE D'ALESSIO, HEATHER LYNN PEARLMAN.

---

Before DYK, REYNA, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

Petitioner-Appellant Chad Sheller seeks an award of attorneys' fees to cover costs in connection with his voluntarily dismissed Vaccine Act petition, which he filed on behalf of his son, Daniel, who tragically passed away after receiving several vaccines.  This case addresses whether Mr. Sheller had a reasonable basis to rely on a now-rejected medical theory of causation for the petition, where the medical theory of causation was potentially viable and even had success at the time the petition was filed.

Petitioner appeals the decision of the Special Master denying attorneys' fees and costs, which the United States Court of Federal Claims affirmed.  Because the Special Master abused his discretion in rejecting the Special Master's decision in *Boatmon* as supporting a reasonable basis, we vacate and remand.

## BACKGROUND

Two days after receiving several vaccinations over a two-week span, Daniel passed away at the age of two months.  Petitioner then filed a petition for compensation under the National Childhood Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-1 to -34 ("Vaccine Act").  Petitioner based his theory of causation—an element of Vaccine Act claims, 42 U.S.C. §§ 300aa-11(c)(1)(C)(ii), -13—on the "Triple Risk Model" of vaccine-triggered sudden infant death syndrome ("SIDS") proposed by Dr. Douglas Miller, a pathologist.  In short, the Triple Risk Model posits that a vaccine can be an exogenous stressor that triggers SIDS in otherwise-vulnerable infants.

At the time Petitioner filed his Vaccine Act petition, the Triple Risk Model had been found to provide a persuasive

theory of attributing SIDS to vaccine causation by a special master in a different case. *Boatmon v. Sec'y of Health & Hum. Servs.*, No. 13-611V, 2017 WL 3432329 (Fed. Cl. Spec. Mstr. July 10, 2017), *review granted, decision rev'd*, 138 Fed. Cl. 566 (2018), *aff'd on other grounds*, 941 F.3d 1351 (Fed. Cir. 2019). However, while Petitioner's case was pending before the Special Master, we held that Dr. Miller's application of the Triple Risk Model in a vaccine case was "an unsound and unreliable theory." *Boatmon*, 941 F.3d at 1361. Mindful of our decision, Petitioner voluntarily dismissed his claim.

Following dismissal, Petitioner sought an award of attorneys' fees. The fees litigation ensued for more than two years and involved a dozen briefs. The Secretary of Health and Human Services originally stated that the statutory elements were met and deferred to the Special Master to exercise his discretion to determine an award for attorneys' fees and costs. In July 2020, the Special Master ordered Petitioner to supplement the motion for fees and costs to explain why a reasonable basis for the claim in the petition existed and ordered the Secretary to respond. Over the course of the ensuing fees litigation, Petitioner filed forty-six additional exhibits to support the claim in the petition, which the Secretary requested that the Special Master strike because they were not submitted until after the case was dismissed and thus only had been filed to support Petitioner's attorneys' fees request.

Ultimately, the Special Master heard oral argument on: (a) the Secretary's motion to strike certain post-merits phase materials; (b) what evidence established a reasonable basis in this case, including evidence submitted after the petition was dismissed; and (c) whether results in other cases like *Boatmon* are evidence that support Petitioner's claim. After argument, the Special Master denied Petitioner's request for fees, largely on the ground that the Special Master's decision in *Boatmon* did not support a finding of a reasonable basis. Petitioner then

filed a motion for review in the Court of Federal Claims, which that court denied.

Petitioner appeals. We have jurisdiction under 42 U.S.C. § 300aa-12(f).

## DISCUSSION

The Vaccine Act's fee scheme makes fee awards available for non-prevailing, good-faith claims so that a petitioner can obtain qualified assistance. *Sebelius v. Cloer*, 569 U.S. 369, 380 (2013) (citing H.R. Rep. No. 99-908, at 22 (1986)); *Cottingham on Behalf of K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1343 (Fed. Cir. 2020). Indeed, "one of the underlying purposes of the Vaccine Act was to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims" from the outset, regardless of whether petitioner ultimately prevails. *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012) (alteration omitted) (quoting *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008)); *see also* H.R. Rep. No. 99-908, at 22 (1986). When Congress decided to make fee awards available, "[it] recognized that having to shoulder attorneys' fees could deter victims of vaccine-related injuries from seeking redress." *Cloer*, 675 F.3d at 1362. Therefore, when a petitioner is denied compensation for a claim, she may still request compensation to cover "reasonable attorneys' fees and other costs incurred . . . if the special master or court determines that the petition was brought in *good faith* and there was a *reasonable basis* for the claim." 42 U.S.C. § 300aa-15(e)(1)(B) (emphasis added).

Mr. Sheller raises three issues on appeal. One, whether the Special Master's reliance on the evidentiary framework from *Althen v. Secretary of Health & Human Services*, 418 F.3d 1274, 1278 (Fed. Cir. 2005), was in accordance with the law. Two, whether the Special Master abused his discretion in denying attorneys' fees and costs

on the ground that the Special Master's decision in *Boatmon* did not support a finding of a reasonable basis. And three, whether the Special Master abused his discretion in striking certain medical articles from the record. We address each in turn.

We review a special master's denial of attorneys' fees and costs under the same standard as the Court of Federal Claims and "will affirm unless the special master's decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *James-Cornelius on Behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) (quoting *Cottingham*, 971 F.3d at 1345); *see also* 42 U.S.C. § 300aa-12(e)(2)(B). "An abuse of discretion occurs if the decision is clearly unreasonable, arbitrary, or fanciful; is based on an erroneous conclusion of law; rests on clearly erroneous fact findings; or involves a record that contains no evidence on which the [factfinder] could base its decision." *Cottingham*, 971 F.3d at 1345 (citing *In re Durance*, 891 F.3d 991, 1000 (Fed. Cir. 2018)). "'Not in accordance with the law' refers to the application of the wrong legal standard . . . ." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (citation omitted). And we review a special master's application of the law de novo. *Id.*

I

First, we address the Special Master's use of the *Althen* factors for his reasonable basis analysis and conclude that using the *Althen* factors as an evidentiary framework does not per se constitute legal error.

To establish entitlement to attorneys' fees pursuant to a Vaccine Act claim, a petitioner must have a reasonable basis to support each of the five statutorily required elements of the petition, one of which is causation. *See Cottingham*, 971 F.3d at 1345–46 (citing 42 U.S.C. § 300aa-11(c)(1)). Indeed, "[b]ecause causation is a necessary element of a petition, [petitioner] must point to

evidence of a causal relationship between the administration of the vaccine and her injuries in order to establish that a reasonable basis for the claim existed when the petition was filed." *Id.* at 1346. This "reasonable basis analysis is limited to objective evidence." *James-Cornelius*, 984 F.3d at 1379 (citing *Cottingham*, 971 F.3d at 1344). And the quantum of objective evidence necessary to establish a reasonable basis is "'lower than the preponderant evidence standard required to prove entitlement to compensation,' but 'more than a mere scintilla.'" *Id.* at 1379 (quoting *Cottingham*, 971 F.3d at 1346). Beyond this, we have not adopted a specific evidentiary framework for establishing that a reasonable basis for the claim existed when the petition was filed. At most, we previously noted the Court of Federal Claims' "objective, totality of the circumstances test" comports with our jurisprudence. *Cottingham*, 971 F.3d at 1344.

Here, the Special Master turned to the *Althen* factors—a three-prong test for determining causation-in-fact on the merits with a preponderance standard in Vaccine Act cases—but at the lower evidentiary standard for a reasonable basis, as set forth in *Cottingham*, to structure his evaluation of a reasonable basis. This does not constitute per se legal error because the *Althen* factors can provide definitional context to causation when evaluating whether there is a reasonable basis that a causal relationship exists between the vaccine and the injury. When assessing causation on the merits for cases like this one where the complained-of injury is not listed in the Vaccine Injury Table, there is no presumption of causation. Rather, a petitioner must demonstrate: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Althen*, 418 F.3d at 1278. Each of these factors speaks directly to whether evidence of a causal relationship between the administration of the

vaccine and a petitioner's injuries exists. Given this, we see no per se error in looking to the *Althen* factors to provide context and structure when evaluating causation for a reasonable basis.

Petitioner argues that the Special Master's application of the *Althen* factors was not in accordance with law because rather than consider the totality of circumstances when evaluating a petitioner's reasonable basis as required, the Special Master "insisted on a quantum of evidence in support of each of *Althen*'s three [factors]." Pet. Br. 26. To Petitioner, "[t]his impermissibly increased the petitioner's burden by making it a requirement to provide particularized evidence of each [factor], rather than evidence of causation, generally." Pet. Br. 28. First, the Special Master was not required to consider the totality of circumstances. Contrary to Petitioner's assertion, there is no direct support in our jurisprudence for such a requirement. As noted above, in prior cases while we have stated that an "objective, totality of the circumstances test" comports with our jurisprudence, it is not required. *Cottingham*, 971 F.3d at 1344.

Second, the Special Master neither required a quantum of evidence for each *Althen* factor, nor did he raise Petitioner's burden. Rather, the Special Master reviewed the entire record and evaluated whether there was evidence of causation under each *Althen* factor. *See* J.A. 26–40. While the Special Master's decision insinuates that a failure to satisfy *Althen* factor one could mean Petitioner necessarily lacks a reasonable basis, *see* J.A. 35, the Special Master still proceeded to analyze whether there was evidence of causation under *Althen* factors two and three. J.A. 35–40. The Special Master also reiterated several times throughout his analysis that only "more than a mere scintilla" of evidence was required to satisfy reasonable basis. *See* J.A. 25, 28, 31, 34. Based on his review, the Special Master concluded that "taken as a whole, [this case's evidence] does not pass the reasonable

basis standard." J.A. 35. Because the Special Master did not require satisfaction of each *Althen* factor and instead flexibly used the *Althen* factors to structure his analysis, stated the correct quantum of evidence required, and applied the correct standard to each piece of evidence he analyzed, we do not see an error in the Special Master's use of the *Althen* factors to structure his reasonable basis analysis in this case.

That said, we caution against a rigid application of the *Althen* factors because a rigid application, which requires some quantum of evidence for each *Althen* factor, could exceed what is required to establish a "reasonable basis." *Cf. Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1332 n.3 (Fed. Cir. 2011) (en banc) ("Congress clearly contemplated that petitioners might not be able to meet the burden to demonstrate causation-in-fact by preponderance at the time the petition is filed. This is easily seen in the statute as a Vaccine Act petitioner, even if ultimately unsuccessful, can still receive compensation to cover reasonable attorneys' fees and other costs incurred in the proceeding 'if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim.'" (quoting 42 U.S.C. § 300aa-15(e)(1)). In some cases, such as "[t]he first time an injury is causally linked with a vaccine," the petitioner might have weaker evidence for *Althen* factor one (medical theory) than *Althen* factor two (logical sequence of cause and effect) but that should not preclude a special master from finding a reasonable basis. *Id.* at 1332 n.4 ("Over time, as injuries occur throughout the population and are linked to a vaccine, the medical community begins to recognize a link between the vaccine and the injury. This can occur through studies published in medical journals or as a result of government research. Often, however, before the link is sufficiently established to become generally recognized by the medical community, petitioners are able to muster enough evidence to receive compensation from the Vaccine Program.").

## II

Now we turn to whether the Special Master nonetheless abused his discretion in finding that the special master's decision in *Boatmon* did not support a finding of reasonable basis. A petitioner seeking attorneys' fees and costs must show "that a reasonable basis for the claim raised in the petition existed at the time the petition was filed." *Cottingham*, 971 F.3d at 1344. Still, "even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees." *James-Cornelius*, 984 F.3d at 1379 (citing 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1362). As previously noted, the quantum of objective evidence necessary to establish a reasonable basis is "'lower than the preponderant evidence standard required to prove entitlement to compensation,' but 'more than a mere scintilla.'" *Id.* (quoting *Cottingham*, 971 F.3d at 1346).

Here, the Special Master abused his discretion by misapplying the law, which led to his erroneous conclusion that Mr. Sheller's causation theory—the Triple Risk Model—"d[id] not pass the reasonable basis threshold," J.A. 35. The Special Master did not consider whether the Triple Risk Model served as a reasonable basis for the petition *at the time of filing*. While the Parties focus on the relevance of our decision in *Boatmon* and dispute whether the Special Master fairly considered its impact on the case at hand, it is undisputed that Petitioner here, like the petitioner in *Boatmon*, relied on the Triple Risk Model. Importantly, at the time Petitioner filed the petition in May 2018, the Triple Risk Model had succeeded as a causation theory before another special master. *Boatmon*, 2017 WL 3432329, at *1, *43. Thus, at that time, the Triple Risk Model was a potentially viable causation theory. However, in July 2018, the Court of Federal Claims reversed the special master's *Boatmon* decision, which we later affirmed in November 2019. *Boatmon*, 941 F.3d at 1360. Still, attorneys' fees were ultimately awarded to the petitioner in

*Boatmon* because the special master concluded that the petition was filed in good faith and with a reasonable basis. *Boatmon v. Sec'y of Health & Hum. Servs.*, No. 13-611V, 2020 WL 2467079, at \*1–2 (Fed. Cl. Spec. Mstr. April 7, 2020).  Although the Triple Risk Model was ultimately rejected on appeal as a viable causation theory *on the merits* under *Althen* factor one, the fact that the special master in *Boatman* later awarded attorneys' fees suggests that the Triple Risk Model was at least a plausible or reasonable theory *at the time of filing*.  Indeed, even at the time of the appeal we understood this "theory that was at best 'plausible.'" *Boatmon*, 941 F.3d at 1360.  A plausible theory, like the Triple Risk Model, resides somewhere "lower than the preponderant evidence standard required to prove entitlement to compensation, but [higher] than a mere scintilla." *James-Cornelius*, 984 F.3d at 1379 (citation and quotations omitted).

Moreover, neither the Secretary nor the Special Master has explained why attorneys' fees should not equally be awarded here or why the Triple Risk Model was not a reasonable causation theory at the time of filing.  While the Special Master acknowledged "the Federal Circuit's affirmance . . . cannot be held against Mr. Sheller in determining whether [a] reasonable basis supported the petition when it was filed," the Special Master did not separately address why the Triple Risk Model was not a reasonable causation theory *at the time of filing*.  J.A. 34.  Instead, the Special Master concluded that Petitioner's causation theory was "[a]t best . . . feasible" without explanation.  *Id.*  Because the Special Master failed to analyze whether the Triple Risk Model was a reasonable causation theory at the time of filing, we conclude that he misapplied the law, which constitutes an abuse of discretion.

Because the decision to deny attorneys' fees rested solely on the absence of a reasonable basis, we vacate that decision and remand for the Special Master to determine,

in his discretion, whether attorneys' fees should be granted in this case. The Special Master's decision in *Boatmon* was sufficient to establish a reasonable basis under the first *Althen* factor. We think it reasonable for Petitioner to postpone additional evidence development as to the application of the Triple Risk Theory to this case until our decision in the *Boatmon* appeal. In exercising his discretion, the Special Master must articulate the basis of any discretionary decision to grant or deny fees, keeping in mind the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal assistance.

## III

Last, we address whether the Special Master abused his discretion by striking from the record certain medical articles—not referenced in the Parties' reasonable basis briefing—that were only submitted during the fee litigation phase of the proceedings after the petition was already dismissed. A special master, in his role as factfinder, has broad discretion to determine what evidence is relevant. 42 U.S.C. § 300aa-12(d) (granting special masters broad discretion in how they conduct Vaccine Act proceedings, including their hearing and evaluation of the evidence); *Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011) ("We do not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder.").

We conclude that the Special Master did not abuse his discretion in striking these medical articles because, despite their late introduction, the Special Master assessed the relevance of each medical article and only struck those determined not to be relevant. *See* J.A. 22–23, 190–94. Here, Mr. Sheller submitted more than 40 additional exhibits consisting of various medical literature. Confronted with Petitioner's "attempt[] to expand the record to substantiate his claim for attorney's fees and

costs," the Special Master still denied the Secretary's motion to strike as to all exhibits that appeared relevant "[t]o allow Mr. Sheller and [his attorney] to present their strongest argument that [a] reasonable basis supported the claim set forth in the petition." J.A. 22, 23. The Special Master then reviewed the additional exhibits and evaluated whether each medical article was relevant. *See* J.A. 23, 190–94. For each medical article stricken from the record, the Special Master succinctly summarized the medical article and explained why it lacked relevance. J.A. 190–94.

Petitioner argues that in striking the medical articles the Special Master violated the principle that special masters are required to consider "the entire record, including all relevant medical and scientific evidence contained in that record." Pet. Br. 33–34 (citing *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1331 (Fed. Cir. 2016)). We disagree. As noted above, the Special Master did consider the entire record, including all *relevant* medical and scientific evidence. Petitioner also argues that the Special Master "determine[d] the relevance of evidence based on whether certain evidence was cited in limited, non-merits briefing," Pet. Br. 37. This argument lacks merit. When evaluating the additional exhibits, the Special Master applied the relevance test from Federal Rule of Evidence 401 because the Vaccine Rules do not define "relevant evidence." *See* J.A. 23. We see no issue with using the Rule 401 relevancy test for this purpose. Therefore, we conclude that the Special Master did not abuse his discretion in striking certain medical articles from the record.

## CONCLUSION

We have considered the Parties' remaining arguments and find them unpersuasive. Because the Special Master abused his discretion, we vacate and remand for further proceedings consistent with this opinion.

## VACATED AND REMANDED

Costs

Costs to Petitioner-Appellant.